31 N.J. Super. 211 (1954)
106 A.2d 307
ROSE PAUL, ET AL., PLAINTIFFS-APPELLANTS,
v.
BRASS RAIL LIQUORS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 7, 1954.
Decided June 16, 1954.
*213 Before Judges JAYNE, STANTON and HALL.
Mr. John Henry Reiners, Jr., argued the cause for the appellants.
Mr. Carl Kisselman argued the cause for the respondent.
The opinion of the court was delivered by STANTON, J.S.C. (temporarily assigned).
The plaintiffs appeal from an adverse judgment in an action in which they sought the return of the sum of $2,650 deposited by them under a contract wherein they agreed to purchase a retail liquor business from the defendant. The case was presented on a stipulation of facts.
Paragraph 7 of the contract provides as follows:
"In the event that the Municipal Excise Board or other municipal authorities of the City of Camden, for any reason not the fault of the buyer, shall refuse to approve the transfer of said plenary retail consumption license, the deposit made hereunder shall be returned to the buyer and this agreement shall be considered void and of no effect."
Paragraph 14 provides that the contract is conditional and contingent upon certain stated matters, one of which is "that the buyers receive the transfer of the plenary retail consumption license from the Municipal Excise Board of the City of Camden, as hereinabove set forth."
The license issuing authority of the City of Camden denied the application for the approval of the transfer of license. The defendant took the position that the reason for the *214 denial was the fault of the plaintiffs, refused to refund the deposit and retained it as liquidated damages pursuant to paragraph 6 of the contract.
The decision of this matter essentially is dependent upon the meaning of the word "fault" as used in paragraph 7. To this end we must seek to ascertain the intention of the parties as disclosed by the language of the contract taken as a whole, as well as the situation of the parties, the surrounding circumstances and the objects that they are seeking to attain. "In short, we are to consider what was written in the light of the circumstances under which it was written, and give to the language a rational meaning consistent with the expressed general purpose." Casriel v. King, 2 N.J. 45, 51 (1949). In this connection, we look to the contract to see what it is that the plaintiffs were to receive for the sum of $26,500. We find that they were to have certain fixtures and personal property described in a schedule, and the good will of the business, together with "all the right, title and interest of the licensee in and to the license aforesaid." The entire purchase price was delivered by the buyers to the attorney of the seller in escrow to await just one thing before the consummation of the contract, and that was the approval of the transfer of the liquor license by the public authority. Other than that, the parties had in effect completed their transaction.
As is well understood, a license to vend intoxicating liquor is merely a temporary permit or privilege; it is not a contract; it is not property. R.S. 33:1-26; In re Schneider, 12 N.J. Super. 449 (App. Div. 1951). The issuance, renewal and transfer of liquor licenses rest in the sound discretion of the issuing authority and its action will not be judicially disturbed in the absence of a clear abuse of discretion. Zicherman v. Driscoll, 133 N.J.L. 586 (Sup. Ct. 1946); Biscamp v. Twp. Council of the Twp. of Teaneck, 5 N.J. Super. 172 (App. Div. 1949).
It is evident, therefore, that in a given case there could be an honest difference of opinion whether the discretion *215 should be exercised for or against the transfer of a liquor license; and the action of the issuing authority would not be disturbed because there was no abuse of discretion.
Was it the agreement of the parties that the plaintiffs would lose their deposit if the discretion of the issuing authority was exercised against their application for the approval of the transfer?
It is the contention of the vendees that the fault mentioned in the contract was used in a prospective sense; that they would be at fault only if they failed or neglected to promptly make application for the transfer and to do and perform diligently all things required of them by law, ordinance or regulation to the end that the board would be in a position to act favorably on their application. On the other hand, the defendant contends that it means any misconduct or failing, however remote, in the lives of either of the vendees which in the discretion of the board might disqualify them or either of them as a licensee.
It might be stated here that the application for the transfer was considered by the board on December 2, 1952, and in its minutes of that date there is this notation:
"Mr. Antinoff had a 30 day sentence for defraud of mail and a violation for a false statement in application for plenary retail consumption license in Atlantic City, N.J., which copy of the violations were attached to the application. Mr. Antinoff's residence was very much in question. All board members agree to hold application for further consideration."
The minutes of the meeting of December 10, 1952, make no reference to the board's reason for denying the application, nor does the communication of the decision by its secretary to the parties. It is assumed that the matters set forth in the minutes of December 2 had some bearing on the denial of the application. It was stipulated in the pretrial order that the plaintiff Antinoff was convicted in 1935 of using the mails to defraud and received a 30-day jail sentence. It would also appear that this conviction and the violation of the Alcoholic Beverage Law referred to above *216 were before the State Commissioner of Alcoholic Beverage Control in 1948 when, following a period of suspension, he permitted the said Antinoff to continue in the possession of a plenary retail consumption license issued by the board of commissioners in Atlantic City. Antinoff's record did not constitute an absolute disqualification of him as a licensee under R.S. 33:1-25. The denial of the license to him and the other plaintiff was in the discretion of the board.
There is no contention here by the defendant that the plaintiffs failed to take any action or to act diligently with respect to the application for a transfer. Nor is it contended that they should have appealed the adverse decision of the local board.
In 9 Williston on Contracts (rev. ed.), section 46, at page 64, in a discussion of the rules of construction, we read as follows:
"Greater regard is to be had to the clear intent of the parties than to any particular words which they may have used in the expression of their intent. A contract must be construed as a whole and the intention of the parties is to be collected from the entire instrument and not from detached portions. Individual clauses and particular words of the agreement, and all parts of the writing and every word of it, will, if possible, be given effect. The words of contracts should be given a reasonable meaning rather than an unreasonable one and a court will endeavor to give a construction most equitable to the parties and which will not give one of them an unfair or unreasonable advantage over the other."
Giving consideration to the contract and the surrounding circumstances, in the light of the rules of construction stated above, it is our opinion that the denial of the application for the transfer of the license by the local board was for a reason not the fault of the plaintiffs and that they are entitled to a refund of the deposit.
The judgment is reversed and the mandate shall issue for the entry of judgment in favor of the plaintiffs and against the defendant for $2,650 and interest thereon.